# Order

Michigan Supreme Court
Lansing, Michigan

November 3, 2010

139209

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

PEOPLE OF THE STATE OF MICHIGAN
      Plaintiff-Appellee,

v

          SC: 139209
          COA: 281844
          Genesee CC: 01-008582-FC

ANGELO ROCHELLE MCMULLAN,
      Defendant-Appellant.
_____/

On order of the Court, leave to appeal having been granted, and the briefs and oral arguments of the parties having been considered by the Court, we hereby AFFIRM the June 2, 2009 judgment of the Court of Appeals. Because a rational view of the evidence did not support an instruction of involuntary manslaughter when considering the particular facts of this case, the trial court did not err in denying defendant's request for the court to instruct the jury regarding involuntary manslaughter. However, we take this opportunity to clarify the opinion of the Court of Appeals.

As the Court of Appeals correctly noted, if a criminal defendant is charged with murder, the trial court should instruct the jury on involuntary manslaughter if the instruction is supported by a rational view of the evidence.[1] Reversal of a trial court's jury instruction decision is appropriate only where the offense was clearly supported by the evidence; an offense is clearly supported where there is substantial evidence to support it.[2] An appellate court must therefore review *all* of the evidence irrespective of who produced it to determine whether it provides a rational view to support an instruction on the lesser charge.

Here, the reasoning of the Court of Appeals relied too heavily on the prosecutor's evidence, accepting as fact evidence that defendant disputed. Specifically, the Court of Appeals assumed as fact two disputed issues: First, that defendant pushed the victim into the car and then shot the victim; defendant contends that he and the victim were engaged in a struggle at the car door when he discharged the weapon. Second, that defendant robbed the victim after the fact, which defendant denies. Even though the Court of Appeals majority partially erred to the extent that it accepted these contentions as proven fact, even absent these additional questions of fact, the lower courts properly concluded that a rational view of the evidence in this case does not support an instruction on involuntary manslaughter.

---

[1] *People v Mendoza*, 468 Mich 527, 541 (2003).

[2] *People v Silver*, 466 Mich 386, 388 (2002); *Mendoza*, 468 Mich at 545.

The facts inescapably show that defendant acted with malice because, at a *minimum*, he "inten[ded] to do an act in wanton and wilful disregard of the likelihood that the natural tendency of [his] behavior is to cause death or great bodily harm,"[3] and did *not* act with an intent merely to injure or with non-malicious gross negligence—the two recognized types of involuntary manslaughter.[4] Defendant admitted that, after a physical altercation with the victim, he left to obtain a loaded gun in order to threaten or scare the victim. Some evidence further showed that, when the defendant returned, the victim was shot in the chest when defendant and the victim again began to struggle at the victim's car. Defendant does not dispute that the gun was in his hand when it was cocked and then fired. The evidence indisputably established that the firearm had to be specifically cocked in order to fire. In particular, defendant conceded that the weapon is "designed to prevent it from firing unless you want it to fire." Based on this chain of events, and for the reasons otherwise stated by the Court of Appeals, we conclude that defendant's actions constitute a malicious series of intentional acts; they do *not* demonstrate a grossly negligent handling of a firearm that inadvertently caused death. Therefore, the trial court did not err in denying defendant's request for the jury to be instructed on involuntary manslaughter.

KELLY, C.J. (*dissenting*).

I would reverse the Court of Appeals decision. I believe that the dissent correctly concluded that defendant's conviction must be reversed because there was substantial evidence to support an instruction on involuntary manslaughter:

> A rational fact-finder could have believed defendant when he said that he did not intend to fire the weapon he was using merely to scare Smith, i.e., that he did not intend to do the act (firing the weapon) that caused Smith's death. That conclusion would be consistent with the long history defendant had with Smith, his attempts to help Smith following the shooting, his apparent grief at what had occurred and especially his

---

[3] *People v Goecke,* 457 Mich 442, 464 (1998).

[4] See *People v Holtschlag,* 471 Mich 1, 21-22 (2004).

corroborated accounts of being under the influence of drugs at the time the shooting occurred. As was the case with the defendant's "intoxication" in *People v Droste*, 160 Mich 66, 78-79; 125 NW 87 (1910), the fact-finder here might have concluded that, "at the moment" the gun discharged, defendant's drug use was sufficient "to rob his act of the necessary elements of murder."[5]

CAVANAGH, J., joins the statement of KELLY, C.J.

---

[5] *People v McMullan*, 284 Mich App 149, 162-163 (2009) (BANDSTRA, J., dissenting).

Although this Court has recognized that the Legislature has generally abolished the defense of voluntary intoxication, see *People v Nickens*, 470 Mich 622, 631 n 7 (2004), the actions occurring in this case occurred before MCL 768.37 went into effect. Accordingly, we need not consider any possible effect of MCL 768.37 on *Droste*.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 3, 2010

_____
Clerk